# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JOSHUA WASHBURN,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:23-cv-00591-RDP |
| } | |
| **CHRISTOPHER MAURICE BROWN, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This matter is before the court on the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendants Pennymac Loan Services, LLC ("Pennymac") and Federal Home Loan Mortgage Corporation ("Freddie Mac"). (Doc. # 30). The Motion has been fully briefed. (Docs. # 32, 33). After careful review, and for the reasons discussed below, the Motion is due to be granted in part and denied in part.

**I.   Background**

On or about November 26, 2014, Plaintiff Joshua Washburn purchased property located at 4230 Main Street, Pinson, Alabama 35126 (the "Property"). (Doc. # 29 at ¶4). The terms of repayment of the loan were set forth in a promissory note (the "Note") executed by Plaintiff in favor of InterLinc Mortgage Services, LLC. (*Id*. at ¶¶ 8-9; Doc. # 29-1 at 12). The Note provides in part that "[i]f I do not pay the full amount of each monthly payment on the date it is due, I will be in default." (Doc. # 29-1 at 13).

To secure repayment of the Note, Plaintiff executed a Mortgage (the "Mortgage") in the principal amount of $83,600.00 in favor of Mortgage Electronic Registration Systems, Inc.

("MERS") as nominee for InterLinc and its successors and assigns. (Doc. # 29 at ¶¶ 4-6; Doc. # 29-1 at 2). The Mortgage includes a Power of Sale provision that authorizes its holder to foreclose on the Property if Plaintiff defaults on the Note. (Doc. # 29 at ¶ 22). Plaintiff alleges that "[t]he Mortgage is a standard Fannie Mae/Freddie Mac Uniform Instrument and is a first lien mortgage on his residence." (*Id*. at ¶ 6).

Plaintiff's Amended Complaint makes numerous allegations about the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (Doc. # 29). The CARES Act, 15 U.S.C. §§ 9001-9080, "contains provisions designed to assist struggling homeowners and mortgagees by allowing them to request forbearance." *Nordeen v. Select Portfolio Servicing Inc*., 2023 WL 6377468, at *1 (D.N.M. Sept. 29, 2023) (citing 15 U.S.C. § 9056). "To avail themselves of this relief, a borrower must have a federally backed mortgage loan and be experiencing financial hardship due to COVID-19." *Nordeen*, 2023 WL 6377468 at *1. "The CARES Act was enacted on March 27, 2020." *In re Roebuck*, 618 B.R. 730, 731 (Bankr. W.D. Pa. 2020).

Thereafter, MERS, as the nominee for InterLinc, executed an Assignment of Mortgage to Pennymac (the "Assignment"). (Doc. # 10-2).[1] The Assignment transferred the Mortgage to Pennymac along with "all interest secured thereby, all liens and any rights due to become due thereon." (Doc. # 10-2 at 2). That Assignment was recorded on August 21, 2019, in the Jefferson County, Alabama probate records at Instrument #2019086543. (*Id*.).

---

[1] A court may look beyond the four corners of a complaint and consider documents "'referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity'" without converting a Rule 12(c) motion to a motion for summary judgment. *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (quoting *Hi-Tech Pharms., Inc. v. HBS Int'l Corp*., 910 F.3d 1186, 1189 (11th Cir. 2018)); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("[T]he conversion provision applicable to Rule 12(b)(6) motions is identical to the one applicable to Rule 12(c) motions[.]"). The Assignment is central to the transaction at issue, is not disputed (Doc. # 32 at 16), and therefore may be considered without converting Defendants' motion into one for summary judgment. *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (holding that the district court did not err in considering the exhibits attached to the motion to dismiss, including an EEOC right to sue letter, because they were both central to the plaintiff's claims and undisputed).

In late 2019 and early 2020, before the COVID pandemic and the passage of the CARES Act, Plaintiff had already fallen behind on his mortgage payments and was in default. (Doc. # 29 at ¶ 20; Doc. # 29-1 at 13). On May 14, 2019, he was approved for a trial modification. (Doc. # 29-1 at 33). His second trial payment was not received by the end of the month in which it was due. (*Id.*). On August 1, 2019, his loan modification request was declined. (*Id.*).

On February 24, 2020, again before the COVID pandemic occurred or the CARES Act was passed, Plaintiff was given a reinstatement by Pennymac and he made a payment of $7008.58. (Doc. # 29 at ¶ 20). He alleges that $2004.05 of the $7008.58 was improperly used to pay (pre-COVID) corporate fees charged on the loan. (*Id.*). On March 13, 2020, Plaintiff called Pennymac and inquired into the balance on his loan. (*Id.*). Pennymac advised him the total amount due on his loan was $931.68. (*Id.*). Even so, Plaintiff only offered to make a payment of $636.28. (*Id.*). After this time, his payments were off by a month because in March he did not pay the total amount due. (*Id.*; Doc. # 29 at ¶ 23). Plaintiff "was unable to meet his payment obligations for the several months that followed because of the previous loss of his job." (Doc. # 29 at ¶ 23).

On November 16, 2020, Pennymac approved Plaintiff for a short-term GSE Forbearance plan, which allowed a reduced payment for December 2020. (Doc. # 29 at ¶ 23; Doc. # 29-1 at 33). However, the reduced payment was not received by the end of the grace period, so further forbearance was declined. (Doc. # 29-1 at 33). At some unidentified time later, Pennymac reported Plaintiff's account as past due to credit bureaus and assessed default-related fees and interest on the loan. (Doc. # 29 at ¶ 24).

Following Plaintiff's default and failure to cure, on June 15, 2022,[2] Pennymac exercised the Mortgage's Power of Sale and conducted a foreclosure sale of the Property. (*Id*. at ¶ 29). Pennymac sold the property to Freddie Mac at the foreclosure sale and recorded a foreclosure deed with the Judge of the Probate Court of Jefferson County, Alabama. (*Id*. at ¶ 30). The Property was later sold to Christopher Maurice Brown. (*Id*. at ¶ 36; Doc. # 10-4).

Freddie Mac initiated an ejectment action against Plaintiff in the Circuit Court of Jefferson County, Alabama to remove Plaintiff from the Property (the "Ejectment Action"). (Doc. # 29 at ¶ 33). On or about November 17, 2022, Plaintiff filed a Lis Pendens against the property in the Probate Court of Jefferson County, Alabama. (*Id*. at ¶ 34). However, before Plaintiff filed an answer in the Ejectment Action, Freddie Mac dismissed the action. (*Id*. at ¶ 35).

Plaintiff alleges that the actions of Pennymac and Freddie Mac have caused him to suffer actual damages. (*Id*. at ¶ 37). He alleges Defendants wrongfully charged late fees and other default-related fees, damaged his credit and credit score, significantly increased his credit utilization percentage, and caused him to suffer credit denials and lost credit opportunities. (*Id*. at ¶ 38). He alleges that Defendants caused him significant stress, aggravation, anxiety and emotional distress. (*Id*. at ¶ 40). He also alleges that Defendants caused him to incur costs and expenses in defending the ejectment suit and pursuing his claims. (*Id*. at ¶ 41).

Plaintiff filed this action on January 8, 2023, by filing a quiet title claim against Brown in the Circuit Court of Jefferson County, Alabama. (Doc. # 1-1 at 2-4). On March 31, 2023, Plaintiff filed a First Amended Complaint adding Pennymac and Freddie Mac as defendants. (Doc. # 1-1 at 64-65, ¶¶ 3-4). On May 8, 2023, Defendants removed the case to this court. (Doc. # 1). Defendants filed separate Motions to Dismiss the First Amended Complaint. (Docs. # 10,

---

[2] The CARES Act only provided for an initial forbearance period of up to 180 days. 15 U.S.C. § 9056. Any further forbearance period was discretionary. (*Id*.; *Nordeen*, 2023 WL 6377468 at *3).

19). Rather than substantively respond to the Motions, Plaintiff moved for leave to file another amended complaint. (Docs. # 22, 26). On October 12, 2023, Plaintiff filed his Second Amended Complaint – the current operative Complaint. (Doc. # 29). Plaintiff's most recent Complaint asserts these claims:

1. Wrongful Foreclosure against Pennymac (Count I);
2. Breach of Contract against Pennymac and Freddie Mac (Count II);
3. Defamation, Libel, Slander against Pennymac (Count III);
4. Fraudulent Misrepresentation against Pennymac (Count IV); and
5. Unjust Enrichment against Pennymac (Count V).

(Doc. # 29 at ¶¶ 43-86).

## II.   Legal Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he

5

plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Put another way, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### III.    Analysis

The court will address each of Plaintiff's claims below, but initially addresses a more fundamental problem with Plaintiff's Second Amended Complaint.

### A.     Plaintiff's Complaint Is Still An Improper Shotgun Pleading

The Eleventh Circuit has repeatedly and forcefully condemned shotgun pleadings. *See Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020). There are four basic categories of shotgun pleadings: 1) those in which "each count adopts the allegations of all preceding counts"; 2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; 3) those that do not separate each cause of action or claim for relief into a different count; and 4) those that assert multiple claims against multiple defendants without specifying which applies to which. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Plaintiff's Second Amended Complaint is a shotgun pleading of the first type. The first paragraph of each count of the Amended Complaint recites that "Washburn realleges factual allegations in paragraphs 1-42 as if set out fully herein." (Doc. # 29 at ¶¶ 43, 47, 62, 73, 82).

The Eleventh Circuit has held that "[i]n the special circumstance of non-merits dismissals on shotgun pleading grounds, we have required district courts to *sua sponte* allow a litigant *one* chance to remedy such deficiencies." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (emphasis added). Here, Plaintiff filed two Complaints in state court. After removal to this court, Plaintiff sought to amend his Complaint in response to Defendants' then-pending initial Motions to Dismiss. (*See* Docs. # 22, 24, 25, 28, 29). Thus, the current pleading is the third iteration of Plaintiff's Complaint – yet it remains a shotgun pleading. (Doc. # 29 at ¶¶ 43, 47, 62, 73, 82).

The Eleventh Circuit has also "held that a 'district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.'" *Vibe Micro*, 878 F.3d at 1295 (quoting *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc)). "After [] one [] opportunity to replead comes and goes, *Daewoo's* rule operates to allow the district court to dismiss with prejudice if the party has still neither filed a compliant pleading nor asked for leave to amend." (*Id.* (citing *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006)). Plaintiff was allowed another opportunity to replead. He has not asked for another one. Therefore, Plaintiff's Second Amended Complaint is due to be dismissed for this reason alone. *Daewoo*, 314 F.3d at 542. But, there is more.

### B. Plaintiff's Wrongful Foreclosure against Pennymac (Count I)

"'Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage.'" *Tannehill v. Wilkie*, 2021 WL 1624275, at *22 (S.D. Ala. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 794431 (S.D. Ala. Mar. 2, 2021) (quoting *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012)). However, "[t]he accepted definition of a wrongful foreclosure cause of action in Alabama is, '[a] mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage *for a purpose other than to secure the debt owed* by the mortgagor.'" *In re Sharpe*, 391 B.R. 117, 152 (N.D. Ala. 2008) (quoting *Reeves Cedarhurst Dev. Corp. v. First Amer. Fed. Sav. and Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992) (internal citations omitted)) (emphasis added); *see also Rangeline Lender LLC v. High Nob-Rangeline, LLC*, 2020 WL 7483943, at *3 (S.D. Ala. Dec. 2, 2020), *report and recommendation adopted sub nom. Rangeline Lender LLC v. High Nob-Rangeline, LLC.*, 2020 WL 7483240 (S.D. Ala.

8

Dec. 18, 2020) (same). "'Under Alabama law, if an action by a mortgagee was for the purpose of securing the debt owed by the mortgagor, while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure.'" *Tannehill*, 2021 WL 1624275 at *22 (quoting *In re Sharpe*, 391 B.R. at 153).

Defendants argue that Plaintiff's wrongful foreclosure allegations fail to state a claim because Plaintiff has not alleged any facts to plausibly suggest the foreclosure sale was pursued for an improper purpose. (Doc. # 30 at 9). Plaintiff responds that Pennymac was not "the holder of the note" and therefore, it "lacked authority to foreclose." (Doc. # 32, pp. 17-18). Plaintiff further asserts a theory that Pennymac "could not rely on the 2019 assignment alone, to foreclose." (*Id*. at 16-17).

In the Amended Complaint, Plaintiff merely asserts, in conclusory fashion, that Pennymac conducted the foreclosure "in violation of the law" and that "[t]he power of sale was exercised for a purpose other than to secure the debt owed." (Doc. # 29 at ¶¶ 44-45). In the section containing the factual allegations of the Second Amended Complaint, Plaintiff alleges that Pennymac conducted the foreclosure sale in in its own name when it was not the owner of the debt or holder of the note, but was merely a servicing agent. (Doc. # 29 at ¶ 29). Plaintiff further alleges that Pennymac failed to strictly comply with the terms of the notice provision of the Mortgage. (*Id*. at ¶ 30).

The Assignment from MERS transferred the Mortgage to Pennymac along with "all interest secured thereby, all liens and any rights due to become due thereon." (Doc. # 10-2 at 2). To the extent that Plaintiff alleges the foreclosure was illegal because of a separation of the note and mortgage, such an argument is not only not implausible but actually also runs contrary to Alabama law. *See Coleman v. BAC Servicing*, 104 So.3d 195 (Ala. Civ. App. 2012). "Alabama

follows the common-law rule that an assignment of the mortgage, in the absence of language evidencing otherwise, also transfers the debt secured by the mortgage, except as to innocent purchasers of the note." *Hunter v. Trustmark Nat'l Bank*, 2016 WL 1051291, at *2, n.2 (M.D. Ala. Feb. 18, 2016), *report and recommendation adopted*, 2016 WL 1048066 (M.D. Ala. Mar. 16, 2016) (citing *Crum v. LaSalle Bank, N.A.*, 55 So.3d 266, 268–70 (Ala. Civ. App. 2009)); *see also Freddie Mac v. Brooks*, 2011 WL 3794683 (M.D. Ala. Aug. 25, 2011). The Assignment did not contain any language reserving the transfer of the debt. (Doc. # 10-2 at 2). Therefore, that Assignment was sufficient under Alabama law to transfer the indebtedness and power of sale to Pennymac, making Plaintiff's theory for why the foreclosure was improper meritless.

Plaintiff's allegations do not plausibly establish that Pennymac did not have the power to foreclose, and Plaintiff has not otherwise alleged any improper purpose for the foreclosure. None of the non-conclusory factual allegations of Plaintiff's Second Amended Complaint plausibly support the proposition that Pennymac foreclosed for any purpose other than to secure the debt owed. Therefore, Plaintiff's wrongful foreclosure claim is due to be dismissed for this reason, as well.

### C. Plaintiff's Breach of Contract against Pennymac and Freddie Mac (Count II)

The elements of a breach-of-contract claim under Alabama law are "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Tannehill*, 2021 WL 1624275, at *16 (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (in turn quoting *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002))). When a plaintiff fails to allege that he has performed under the contract, he cannot maintain a breach of contract claim. *See Fed. Home Loan Mortg. Corp. v. Capps*, 2019 WL 1028008, at *8 (N.D. Ala. Mar. 4, 2019) (citing *Bias v.*

*Cenlar Agency, Inc*., 2018 WL 2365428, at *5 (N.D. Ala. May 24, 2018) (dismissing breach of contract claim because of borrower's admitted nonperformance) and *Tidmore v. Citizens Bank & Tr*., 250 So. 3d 577, 590 (Ala. Civ. App. 2017) (borrower "cannot establish his own performance under the mortgage contract, and, therefore, he failed to present evidence of an essential element of his breach-of-contract []claim")).

While Plaintiff's breach of contract claim is not a model of clarity, it appears that he alleges that his Mortgage contract incorporates state and federal law, and Plaintiff notes that the Mortgage identifies the Real Estate Settlement Procedures Act in paragraph P. (Doc. # 32 at 19). Plaintiff asserts that he "activated his right to forbearance by making a request to Penny[m]ac for loss mitigation assistance" and "Penny[m]ac fail[ed] to temporarily suspend payments in accordance with the CARES Act" and "assessed default-related fees and interest to the loan for 18 months" all "in violation of the Act." (Doc. # 29 at ¶¶ 54-55). In doing so, Plaintiff asserts that Defendants "wrongfully hindered [Plaintiff]'s performance under the Note and Mortgage, by failing to comply with the CARES Act, and therefore caused [Plaintiff]'s nonperformance." (*Id*. at ¶ 57). Plaintiff further alleges that Defendants breached the mortgage by exercising the power of sale without complying with state and federal law. (*Id*. at ¶ 59).

As discussed above, it is undisputed that Plaintiff was in default long before the COVID pandemic occurred and before the CARES Act was passed. There are no allegations suggesting that its mitigation procedures were ever an issue before those events. (Doc. # 29 at 20). Thus, the argument that Defendants failed to offer forbearance and that caused Plaintiff's failure to perform is not plausible, even based on Plaintiff's own allegations. Moreover, regarding the pre-COVID default, RESPA and Regulation X only require a loan servicer to "evaluate a *complete* loss-mitigation application within 30 days of receipt of the application." *Urdaneta v. Wells*

11

*Fargo Bank N.A.*, 734 F. App'x 701, 704-05 (11th Cir. 2018) (emphasis added) (quoting 12 C.F.R. § 1024.41(c)(1) (2017)). Plaintiff has not alleged that he submitted a complete loss mitigation package. Further, nothing in RESPA or Regulation X imposes a duty on a loan servicer to provide a borrower with "any specific loss mitigation option." *Urdaneta*, 734 F. App'x at 704 (citing 12 C.F.R. § 1024.41(a)); *see also Star Props., LLC v. Kirby*, 2017 WL 9511144, at *18 (N.D. Ala. May 16, 2017) ("[T]he loss mitigation procedures clearly set out that § 1024.41 do not 'impose[ ] a duty on a servicer to provide any borrower with any specific loss mitigation option.'").

Plaintiff had already defaulted and was given a reinstatement/trial modification in February 2020 with which he failed to comply. (*Id.*; Doc. # 29-1 at 33-34). On November 16, 2020, Plaintiff was approved for a short-term forbearance plan which allowed a reduced payment for December 2020. (Doc. # 29-1 at 33). Yet, the reduced payment was not received by the end of the grace period, so further forbearance was declined. (*Id.*). Thereafter, Pennymac did not take any action for almost a year and a half, until June 15, 2022, when it exercised the Mortgage's Power of Sale and conducted a foreclosure sale of the Property. (*Id.* at ¶ 29).

Thus, the allegations of Plaintiff's Second Amended Complaint fail to plausibly establish that he had performed under the Mortgage contract. Therefore, Plaintiff's breach of contract claim based on that contract is due to be dismissed for this additional reason. *See Capps*, 2019 WL 1028008 at *8; *Bias*, 2018 WL 2365428, at *5; *Tidmore*, 250 So. 3d at 590.[3]

---

[3] The court also has grave concerns about whether Plaintiff has adequately alleged that he held a federally backed mortgage. He has only alleged that a Freddie Mac form mortgage was used. (Doc. # 29 at ¶ 6). He has not plausibly alleged that Freddie Mac was his lender or that it was actually involved in is mortgage at any point. "[F]ederally backed loans include those 'purchased or securitized by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association.'" *Nordeen*, 2023 WL 6377468 at *1 (quoting 15 U.S.C. § 9056(a)(2)(G). In contrast, Plaintiff has plausibly alleged that Freddie Mac purchased the property out of the foreclosure sale and sold it to Brown. This is relevant because where "[b]orrowers' mortgage loan is no longer federally backed by FHA insurance [], the CARES Act's provision for an economic hardship forbearance does not

### D.     Plaintiff's Defamation, Libel, Slander against Pennymac (Count III)

This claim is based on Plaintiff's allegations that Pennymac published statements indicating that Plaintiff had defaulted on the Mortgage loan and was in foreclosure to credit reporting agencies and in the newspaper. (*See, e.g.*, Doc. # 29 at ¶¶ 63-67).

There are two types of defamation: libel, which involves the use of print media or written material to publish a defamatory comment; and slander, which involves the oral expression of a defamatory comment. *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999). To prove a communication was defamatory, a plaintiff must present evidence establishing the following elements: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub. Co., Inc.*, 544 So.2d 875, 877 (Ala. 1989) (citing Restatement (2d) of Torts § 558 (1977)). Importantly, however, "[t]ruth is an absolute defense" to a defamation claim. *Foley v. State Farm Fire and Cas. Ins. Co.*, 491 So.2d 934, 937 (Ala. 1986) (citation omitted).

First, to the extent that this claim is based on information submitted to credit reporting agencies, any state law claim about that submission is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*. *Goodreau v. US Bank Tr. Nat'l Ass'n*, 2019 WL 2601543, at *6 (N.D. Ala. June 25, 2019) (there is a growing consensus that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies are preempted by section 1681t(b)(1)(F)); *Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *6 (N.D.

---

apply [] as a matter of law." *Wilmington Sav. Fund Soc'y, FSB as Tr. of Residential Credit Opportunities Tr. V v. Clay*, 2020 WL 6544242, at *3 (D.N.M. Nov. 6, 2020).

Ala. Aug. 27, 2015) (collecting cases). In enacting the FCRA, Congress wanted to eliminate all state causes of action "relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Embry v. Carrington Mortg. Servs., LLC*, 2023 WL 3991043, at *8 (N.D. Ala. June 13, 2023), *appeal dismissed*, 2023 WL 9953755 (11th Cir. Dec. 27, 2023) (citing *Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1322 (S.D. Ala. 2002)).

Second, to the extent that this claim is based on publication of the foreclosure sale in the newspaper, Plaintiff's own pleadings show that there is nothing false about that statement – or, at a minimum, do not plausibly allege falsity. Plaintiff alleges that Pennymac "published in the newspaper false information regarding his account being in default and false information regarding its right to conduct a foreclosure sale on [Plaintiff]'s property." (Doc. # 29 at ¶ 64). More specifically, Plaintiff alleges that the "foreclosure sale notice states that [Plaintiff]'s loan is in default and in foreclosure." (*Id.* at ¶ 67). But, Plaintiff was in default and had been since approximately 2019. After another trial forbearance plan in late 2020, Pennymac waited over a year and a half before putting Plaintiff's loan into foreclosure. (Doc. # 29 at ¶ 20; Doc. # 29-1 at 33-34). Thus, everything in the foreclosure notice was true, And, under the Assignment of Mortgage, Pennymac had the right to foreclose. (Doc. # 10-2). Because the pleadings in this case show the alleged defamatory statements were true (or, again, do not sufficiently allege falsity), they are not actionable. *See Capps*, 2019 WL 1028008, at *9 (holding notice of foreclosure sale was not defamatory – "[r]egardless of whether there was a defect in the foreclosure process" – because plaintiff was in default at the time of its publication and thus its contents were "undisputedly true.").

Further, as to the claim of libel based on publishing the foreclosure notice in the newspaper, Plaintiff "must provide facts supporting the assertion that the publication made was either (1) actionable irrespective of special harm or (2) resulted in special harm." *Jackson v. Bank of New York Mellon*, 2016 WL 4942085, at *11 (S.D. Ala. July 19, 2016), *report and recommendation adopted*, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016), *aff'd on other grounds sub nom. Jackson v. Bank of Am., N.A.*, 898 F.3d 1348 (11th Cir. 2018). Plaintiff alleged the following harm from Defendants' alleged defamation:

> This harmed Washburn's reputation and character. As a result, Washburn suffered damages of his reputation which negatively affected his credit and his business causing monetary losses. As a result of the intentional communication to third parties of false information, Washburn was caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule. Said economic losses constitute special damages.

(Doc. # 29 at ¶ 70).

The allegations of harm here are virtually identical to the harm alleged in *Jones v. Bank of Am., N.A.*, 2019 WL 2744470, at *11 (N.D. Ala. July 1, 2019). There, the court summarized the harm alleged as follows:

> Plaintiff alleges that Defendants published and communicated false and defamatory statements regarding Plaintiff and that such communications "harmed the reputation of the Jones and/or deterred third persons from associating with Jones." (Doc. 18 ¶ 51). With regard to damages, Plaintiff additionally states that he "was caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule," "was caused to be injured and damaged," and that the allegedly defamatory statements "harmed Jones's reputation and character" which caused him to suffer "damages of his reputation which negatively affected his credit and his business[] causing monetary losses."

*Jones*, 2019 WL 2744470 at *11. The *Jones* court noted that the plaintiff had not adequately alleged special damages because "[n]owhere else in the amended complaint does Plaintiff allege that he owns a business and does not explain how his business was damaged by any alleged false and defamatory statements." *Id*. at *11, n.13. The same is true of Plaintiff's Amended Complaint

15

here. "Plaintiff did not set forth any facts that the allegedly defamatory statements were actionable irrespective of special harm or present facts showing he suffered special harm, even after Defendants moved to dismiss this claim on those grounds. As a result, [Plaintiff's] defamation claim is due to be dismissed." *Id*. at *11; Doc. # 10 at 15-16; Doc. # 29. For these additional reasons, Count Three of Plaintiff's Amended Complaint is due to be dismissed.

    E.   **Fraudulent Misrepresentation against Pennymac (Count IV)**

  Under Alabama law, the elements of a fraudulent misrepresentation claim are "(1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from the reliance." *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 725 (Ala. 2009). Alabama law provides that all misrepresentation claims, whether intentional, negligent, or innocent, are claims of "legal fraud." Ala. Code § 6-5-101 ("Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.").

  Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Pleading a claim with particularity requires several details that regular notice pleading generally does not:

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

  Alabama law also provides that "'one suffers no damage where he is fraudulently induced to do something which he is under legal obligation to do, such as pay a just debt, ... or perform a valid contract.'" *Reeves v. Porter*, 521 So.2d 963, 968 (Ala. 1988) (quoting 37

16

Am.Jur.2d *Fraud and Deceit*, § 295, at 392–93 (1968) (emphasis omitted). In *Reeves*, the court held that "[t]he alleged misrepresentations in the present case were not material, because the Reeveses were not, and could not have been, injured by reliance thereon, given the circumstances in which they were made." 521 So.2d at 969. The same rationale applies here. Plaintiff was obliged under the mortgage and note. His allegations do not plausibly support the inference that he took any action which damaged him in reliance on any alleged misrepresentations because he was already under a legal obligation.

Furthermore, Plaintiff's allegations about alleged misrepresentations do not meet Rule 9's particularity requirement. In the factual section of his Amended Complaint, Plaintiff alleges that he had conversations at certain times with Pennymac representatives, but the allegations of misrepresentations indicate only that Plaintiff was told he owed amounts he did not think he owed and he was not given forbearance options under the CARES Act. (Doc. # 29 at ¶¶ 20-23). In Count Four, Plaintiff alleges that "[t]he fraudulent misrepresentations [that] were [made related to] a material fact regarding Washburn's options to keep his loan current and prevent foreclosure, and the added fees and expenses caused by Penny[m]ac's wrongful actions." (Doc. # 29 at ¶ 79). But again, although Plaintiff has alleged a Freddie Mac form was used for his mortgage, he has not plausibly alleged that he had a federally backed mortgage that would make the CARES Act options applicable.

For all of these additional reasons, Plaintiff's fraudulent representation claim is due to be dismissed.

### F.     Unjust Enrichment against Pennymac (Count V)

To prevail on an unjust enrichment claim in Alabama, a plaintiff must show that "the defendant holds money which, in equity and good conscience, belongs to the plaintiff." *Mantiply*

17

*v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006) (internal quotation marks and emphasis omitted). A plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (quotation omitted).

Defendant has moved to dismiss this claim because Plaintiff has alleged the existence of a contract in his breach of contract claim — the mortgage assigned to Pennymac. (Doc. # 30 at 19-20). Plaintiff responds that this claim is pled in the alternative to his breach of contract claim. (Doc. # 32 at 25-26).

Federal courts applying Alabama law routinely and consistently find that unjust enrichment is not cognizable when there is an express contract between the parties. *See Branch Banking & Tr. Co. v. Howard*, 2013 WL 951652, at *6 (S.D. Ala. Mar. 08, 2013) ("Alabama law is clear that quasi-contractual equitable remedies such as unjust enrichment are not cognizable in the presence of an express contract between the parties that governs the same subject matter."); *Univalor Tr., SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) ("[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law."). However, "[a] plaintiff may proceed under both a breach of contract claim, and an unjust enrichment claim on the same subject when the existence or enforceability of the contract is in dispute." *Forward Momentum, LLC v. Team Health Inc.*, 2019 WL 5616904, at *3 (M.D. Ala. Oct. 30, 2019).

"Although a party may not recover for both breach of contract and unjust enrichment, at the pleading stage, 'a party may state as many separate claims or defenses as it has, regardless of consistency.'" Fed. R. Civ. P. 8(d)(3). *Fortune v. Cibran*, 2023 WL 5351986, at *3 (N.D. Ala.

Aug. 21, 2023). Plaintiff has disputed the validity assignment of the mortgage to Pennymac. And the court has determined that the breach of contract claim is due to be dismissed. Thus, the court finds that dismissal of the unjust enrichment claim is not appropriate merely because Plaintiff also asserted a breach of contract claim. Accordingly, Defendant's Motion to Dismiss will be denied as to Count Five.

**IV.   Conclusion**

For all the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. # 30) is due to be granted in part and denied in part. A separate order will be entered.

**DONE** and **ORDERED** this June 25, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE